# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE EDWARD BEJARAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DERRAL ADAMS, et al.,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　　／ | CASE NO. 1:09-cv-00478-AWI-SMS PC<br><br>ORDER REQUIRING PLAINTIFF EITHER TO FILE AMENDED COMPLAINT OR TO NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE<br><br>(Doc. 12)<br><br>RESPONSE DUE WITHIN 30 DAYS |

Plaintiff Jesse Edward Bejaran ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at California State Prison, Corcoran ("CSP-Corcoran"). Plaintiff is suing under section 1983 for the violation of his rights under Eighth and Fourteenth Amendments. Plaintiff names Derral Adams (warden), M. Junious (chief deputy warden), Lt. Rodriguez, Sgt. Silva, Sgt. Gomez, J. C. Garcia, CCI Briggs, CCII Rangel, IGI Berna, and IGI Espinoza as defendants. For the reasons set forth below, Plaintiff will be ordered to notify the Court of his willingness to proceed only on the claims found to be cognizable in this order, or to file an amended complaint curing the deficiencies found in his non-cognizable claims.

**I.      Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

**II.    Background**

    **A.    Procedural Background**

Plaintiff filed the Original Complaint in this action on March 2, 2009. (Doc. #1.) The Court screened Plaintiff's complaint on July 31, 2009. (Doc. #11.) Plaintiff's complaint was dismissed for failure to state any claims and Plaintiff was given leave to file an amended complaint. Plaintiff filed his First Amended Complaint on September 2, 2009. (Doc. #12.) This action proceeds on Plaintiff's First Amended Complaint.

///

B. **Factual Background**

On July 20, 2007, Plaintiff arrived at Deuel Vocational Institution - Tracy and told prison officials there that he wished to disassociate himself from the "Nuestra Familia Prison Gang." Plaintiff was placed in administrative segregation pending further review to protect him from other inmates. On July 25, 2007, Plaintiff attended an Institutional Classification Committee ("ICC") meeting and informed prison officials that he had already participated in a "debriefing" in December 2004. The prison officials in attendance acknowledge Plaintiff's "debrief report." Plaintiff was told that he still needed to submit an "autobiography." Plaintiff turned in his autobiography and Plaintiff was cleared for "Integrated Non-Affiliated Yard."

Plaintiff expressed concern about whether his debrief report and autobiography would be in his central file and acknowledged at other prison institutions so that he could continue the "integrated yard program," or "phase two" of the debriefing program immediately after he transferred. Plaintiff was told that the necessary reports and documents were placed in his central file. On February 27, 2008, Plaintiff was transferred to CSP-Corcoran and placed in the "Security Housing Unit" ("SHU"). Plaintiff told the intake sergeant that he was a gang drop-out and already debriefed and submitted an autobiography. Plaintiff also stated that he had safety concerns and should not be housed around active gang members because he was a "high priority target."

Plaintiff was told that the "safety concerns section" of his file was lost and that he would be housed in a building with active gang members. Plaintiff again voiced his safety concerns but was nonetheless placed in the SHU with other active gang members. On March 6, 2008, Plaintiff attended an ICC meeting before Defendant Junious (as well as Bueno and Jennings, who are not named as defendants). Plaintiff told the ICC that he wanted to be removed from his current building because of safety concerns, and that he had gone through the debriefing processes at his last prison. The ICC chose to leave Plaintiff in the same building. Plaintiff was moved to a different building after other inmates tried to harm him. However, Plaintiff's new building also had validated gang members. Plaintiff continued to request a move to a building that did not have active gang members.

Defendant Berna told Plaintiff to submit an autobiography, which Plaintiff did a few days later. Plaintiff later asked Defendant Gomez if his autobiography was approved. Plaintiff was told

3

to submit another autobiography, which was again denied.  Plaintiff's third autobiography was accepted on July 23, 2008.  Plaintiff was then moved to a building with non-active gang members that were undergoing the debriefing program.  Plaintiff alleges that his life was in danger between February 27, 2008 and August 13, 2008, when Plaintiff was housed in a building with active gang members.

In August 2008, Plaintiff again tried to tell the ICC that his debriefing had already been completed but the ICC members, R. Davis, Sgt. Warren, CCI Briggs, Sgt. Gomez, and G. Rangel, refused to acknowledge Plaintiff's debriefing.  Plaintiff was told that he would have to complete the debriefing process again.  On January 7, 2009, Plaintiff appeared before the ICC again and told Defendant Derral Adams that he had a complete debrief report in his file.  Adams told Plaintiff to direct his questions to Lt. Rodriguez.  Plaintiff asked why his report was not acknowledged and Rodriguez told Plaintiff to address the issue after the meeting, allegedly to avoid being on the record.  Plaintiff then spoke with Defendant Garcia and Espinoza and explained that he already completed his debriefing with Agent Mike Brodie and Detective Perry.  Defendant Silva then walked up and declared "I know Agent Brodie" and requested to see Plaintiff's central file.  Plaintiff's debrief report was then inexplicably discovered, but Plaintiff was told that because his debriefing was not done at CSP-Corcoran or at Pelican Bay, it would not be acknowledged.  Plaintiff complains that there must have been some sort of conspiracy going on because nobody was doing their job and prison officials should have found and acknowledged Plaintiff's debrief report earlier.  Plaintiff complains that Defendants' actions not only placed Plaintiff's life in danger in violation of the Eighth Amendment, but also deprived Plaintiff of his protected liberty interest in being housed on the "mainline" with other drop-out inmates.

### III. Discussion

#### A. Eighth Amendment Claim

Plaintiff claims that Defendants violated his rights under the Eighth Amendment by endangering his life when he was housed in a building with active gang members.  The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'"  Estelle v. Gamble, 429

U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)).  A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious", Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991), and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind", Id. (quoting Wilson, 501 U.S. at 298).  The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities". Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety.  Id. (quoting Wilson, 501 U.S. at 302-303).  A prison official acts with deliberate indifference when he/she "knows of and disregards an excessive risk to inmate health or safety".  Id. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.

"Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982).  To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994).  To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837.

Plaintiff claims that his life was in danger because he was a drop-out and other active gang members had a "hit" out on him.  Plaintiff alleges that he was housed in a building with other active gang members between February 27, 2008 and August 13, 2008.  Thus, prison officials who were aware of the danger to Plaintiff's safety and caused Plaintiff to be housed in a building with active gang members during that period of time are liable for violating Plaintiff's rights under the Eighth Amendment.  Plaintiff was initially housed with active gang members by an unidentified intake

sergeant, despite Plaintiff declaring his safety concerns to him. Plaintiff alleges that he again voiced his safety concerns at a March 6, 2008 ICC meeting attended by Defendant Junious, along with "Bueno, CCI" and "M. Jennings FC" (who are not named as defendants). Thus, Plaintiff alleges that Defendant Junious was aware of the threat to Plaintiff's safety and did not take action to rectify it. Plaintiff also alleges that Defendant Berna and Gomez were aware of the danger to Plaintiff's safety but did not move Plaintiff until they accepted his third "autobiography." Plaintiff states a cognizable claim against Defendants Junious, Berna, Gomez, and the unidentified "John Doe" intake sergeant.

### B. Fourteenth Amendment Claim

Plaintiff claims that Defendants violated his rights under the Due Process Clause of the Fourteenth Amendment by depriving Plaintiff of his protected liberty interest in being housed on the mainline. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Plaintiff's claims alleging that he was housed with other active gang members that threatened his safety from February 27, 2008 to August 13, 2008 is sufficient to support an Eighth Amendment Claim. However, Plaintiff also appears to claim that his housing after August 13, 2008 violated his rights under the Fourteenth Amendment. From the Court's reading of Plaintiff's complaint, it appears that inmates going through the gang drop-out/debriefing process are temporarily housed in the SHU or administrative segregation while the process is completed. After the process is completed, they are moved to "mainline" housing. Plaintiff alleges that after Plaintiff was moved on August 13, 2008, even though there was no longer a threat to his safety, Plaintiff's constitutional rights were violated because he should have been housed on the "mainline." Plaintiff complains that prison officials should have acknowledged his "debrief report" earlier and should not have forced

6

Plaintiff to go through the debriefing process again. Thus, Plaintiff alleges that his stay in housing used for inmates going through the drop-out process was wrongfully extended and that he has a protected liberty interest in being housed in the "mainline." Plaintiff alleges that Defendants Briggs, Gomez, Rangel, Adams, Rodriguez, Garcia, Espinoza, Silva, Junious, and Berna were responsible for failing to acknowledge Plaintiff's prior debriefing and forcing Plaintiff to complete the debriefing process as second time.

Plaintiff complains that prison officials violated their own regulations by forcing Plaintiff to complete the debriefing process twice. However, since Sandin, the inquiry into whether a particular act constitutes a deprivation of a protected liberty interest has shifted from focusing on whether prison officials violated "mandatory language in prisoner regulations" to an inquiry into whether the alleged deprivation was an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. 483-484. Thus, the fact that prison officials violated their own regulations does not necessarily mean that Plaintiff was deprived of a liberty interest.

Plaintiff fails to allege any facts that suggest that he has a protected liberty interest in "mainline" housing. The Supreme Court in Sandin held that a prisoner does not hold a protected liberty interest in not being housed in disciplinary segregation. Sandin, 515 U.S. 485-87. Determining whether a change in housing conditions impacts a protected liberty interest is an inquiry requiring a factual comparison between conditions in the "mainline" and conditions in the housing used for "debriefing." Plaintiff fails to present any allegations describing the difference between his housing while going through the drop-out/debriefing process and housing on the "mainline." It is insufficient to allege that the conditions were more restrictive or harsh. In order to create a liberty interest, the differences in the living conditions must be so great as to amount to an atypical and significant deprivation. Since Plaintiff has failed to provide any allegations describing any difference in living conditions between "mainline" housing and housing used for "debriefing," the Court finds that Plaintiff has failed to allege facts necessary to state a claim under the Due Process Clause. Plaintiff fails to state any claims against any defendants for violating his rights under the Due Process Clause.

**IV.     Conclusion and Order**

Plaintiff's complaint states cognizable claims against Defendants Junious, Berna, Gomez, and the unidentified "John Doe" intake sergeant for deliberate indifference to a threat to Plaintiff's safety in violation of the Eighth Amendment. Plaintiff's complaint fails to state claims against any other defendants. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and defendants, and will forward Plaintiff three (3) summonses and three (3) USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

1  allows the court to draw the reasonable inference that the defendant is liable for the misconduct
2  alleged." Id. (citing Twombly, 550 U.S. at 556).
3      Finally, Plaintiff is advised that an amended complaint supercedes the original complaint.
4  Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567
5  (9th Cir. 1987).  The amended complaint must be "complete in itself without reference to the prior
6  or superceded pleading."  Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged
7  in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d
8  at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth,
9  114 F.3d at 1474.  In other words, even the claims that were properly stated in the original complaint
10 must be completely stated again in the amended complaint.
11     Based on the foregoing, it is HEREBY ORDERED that:
12     1.    The Clerk's Office shall send Plaintiff a civil rights complaint form;
13     2.    Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
14         a.    File an amended complaint curing the deficiencies identified by the Court in
15             this order, or
16         b.    Notify the Court in writing that he does not wish to file an amended
17             complaint and wishes to proceed only against Defendants Junious, Berna,
18             Gomez, and the unidentified "John Doe" intake sergeant for violation of the
19             Eighth Amendment; and
20     3.    If Plaintiff fails to comply with this order, this action will be dismissed for failure to
21         obey a court order.
22 IT IS SO ORDERED.
23 **Dated:   November 10, 2009**        /s/ Sandra M. Snyder
                                            UNITED STATES MAGISTRATE JUDGE